*172 OPINION OF THE COURT
Chief Judge Cooke.
This appeal presents the question left undecided in People v Belton (55 NY2d 49, 54, n 3): whether, when police engage in a lawful search pursuant to the automobile exception to the State and Federal Constitutions’ warrant requirements, they may search a locked container located in the passenger compartment of an automobile. It is held that when the circumstances giving rise to probable cause to arrest a driver or passenger in the automobile also support the belief that the automobile contains contraband related to the crime for which the arrest is made, police may search, within a reasonable time after the arrest, any container, locked or otherwise, located in the automobile.
I
Police stopped defendant after they observed him driving his pickup truck while a female passenger held under his nose a rolled bill inserted into a small manila envelope. When defendant stepped out of his vehicle, police saw a plastic vial containing white powder protruding out of defendant’s vest pocket. The vial was seized and defendant was arrested, frisked, and administered Miranda warnings. Defendant volunteered that a traveling bag located behind the seat in the passenger compartment of the truck did not belong to him. One of the officers removed the piece of luggage, which was locked, forced it open with a screw driver, and found cash, a bank account book in defendant’s name, and several envelopes containing a white powdery substance, later identified as cocaine.
Defendant moved to suppress the material seized from the suitcase as taken in violation of his constitutional rights against unreasonable searches and seizures. The court found that while the initial stop of defendant was valid, the police were required to obtain a warrant before searching the locked bag and, therefore, the material seized from it should be suppressed. In so holding, the suppression court relied on the Supreme Court’s decisions in United States v Chadwick (433 US 1) and Arkansas v Sanders (442 US 753).
The analysis employed by the court in finding no justification for the warrantless search of defendant’s suitcase *173 centered on the holdings in Chadwick and Sanders that, unlike the situation with respect to automobiles generally, a person has no reduced expectation of privacy with respect to property kept in closed containers and, once a container has been seized by police, the obtaining of a warrant for their search is no longer impracticable. The court reasoned that inasmuch as defendant had a legitimate expectation of privacy in the contents of his suitcase, and no exigency existed, police had no justification to proceed with the search in the absence of a warrant. The Appellate Division affirmed, without opinion.
II
Since the suppression court granted defendant’s motion, the United States Supreme Court in United States v Ross (456 US 798), has expanded the scope of the automobile exception and, in doing so, explicated and distinguished Chadwick and Sanders. Inasmuch as one of the principal points of contention in this appeal concerns whether Ross should be given retrospective application, it is necessary to examine the Supreme Court’s reasoning in Chadwick and Sanders, as well as its decision in Ross.
A
In Chadwick, the Supreme Court considered the argument whether the rationale underlying the automobile exception to the Fourth Amendment’s warrant requirement should apply to movable, closed containers. In that case, Federal railroad agents became suspicious when they noticed that a padlocked footlocker that was to be loaded on a train was unusually heavy and was leaking talcum powder, a substance known to be used to mask the aroma of marihuana. The train was met at its destination by Federal narcotics agents who, through the use of a trained police dog, determined that the footlocker contained marihuana. Rather than securing a warrant, the agents waited for the defendant to retrieve the footlocker, whereupon it was seized and searched. A large quantity of marihuana was discovered.
In evaluating the reasonableness of the warrantless search, the court considered the rationale underlying the automobile exception to the Fourth Amendment’s warrant *174 requirement. The court noted that the search of automobiles believed upon probable cause to contain contraband has constituted a long-standing exception to the warrant requirement (see United States v Chadwick, 433 US 1, 11-12, supra; see, also, Carroll v United States, 267 US 132). While the basis for this exception historically had been the inherent mobility of the automobile, which made obtaining a warrant impracticable, the Supreme Court also acknowledged that it had “sustained ‘warrantless searches of vehicles * * * in cases in which the possibilities of the vehicle’s being removed or evidence in it destroyed were remote, if not nonexistent’ ” (United States v Chadwick, 433 US 1,12, supra, quoting Cady v Dombrowski, 413 US 433, 441-442). The court noted that great reliance in supporting the exception was placed on the diminished expectation of privacy one has in an automobile, due to its highly visible interior, its use on public thoroughfares, and its being subjected to extensive regulation and inspection (id., at pp 12-13).
This diminished expectation of privacy surrounding automobiles, the court held, did not apply to the footlocker or other closed luggage. The footlocker was not exposed to public view or “subject to regular inspections and official scrutiny on a continuing basis” (id., at p 13). Nor, in the court’s view, did the mobility of a movable closed container justify excepting its search from the warrant requirement as the footlocker, having been immobilized, was not subject to loss or destruction pending the obtaining of a warrant (id.). Thus, the rationale underlying the automobile exception was inapplicable to closed containers, and, as a general matter, a search of closed, movable containers in nonexigent circumstances could not be conducted without a warrant.
In Arkansas v Sanders (442 US 753, supra), the court considered whether closed containers in a car may be examined as part of an otherwise proper search of the car under the automobile exception. In that case, police had been informed that the defendant would arrive on a particular flight landing at the Municipal Airport in Little Rock, Arkansas, carrying a green suitcase containing marihuana. The defendant, who fit the description given by the *175 informant, arrived on the flight. Police observed him place some hand luggage in a taxi, and return to the terminal’s baggage area to retrieve a green suitcase. The defendant handed the bag to a companion who had met him at the airport. Eventually, both returned to the taxi and the green suitcase was placed in its trunk. Police stopped the taxi, as it pulled away from the terminal and had the driver remove the green suitcase. A warrantless search of the suitcase revealed its contents to be marihuana.
The Supreme Court held that the warrantless search of the suitcase violated the Fourth Amendment. The court first reiterated its holding in Chadwick that the rationale supporting warrantless searches of automobiles — mobility and diminished expectation of privacy — does not apply to closed containers (see Arkansas v Sanders, 442 US 753, 762, supra). While acknowledging that “[a] closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides”, the court noted that “the exigency of mobility must be assessed at the point immediately before the search — after the police have seized the object to be searched and have it securely within their control” (id., at p 763). The court stated that inasmuch as police had already seized the suitcase, “the extent of its mobility [was] in no way affected by the place from which it was taken” (id.). The court added that while the administrative burdens to law enforcement agencies attendant in requiring them to post guard or to move and store an immobilized automobile while procuring a search warrant provide an additional basis for permitting a warrantless search, “[n]o comparable burdens are likely to exist with respect to the seizure of personal luggage” (id., at pp 765-766, n 14). Accordingly, the search was held not justified under the automobile exception.,
In United States v Ross (456 US 798, supra), the scope of the automobile exception was expanded. In that case, police received a tip from a reliable informant that a man was selling narcotics from the trunk of a “purplish maroon” Chevrolet Malibu with District of Columbia license plates. The car described by the informant was sighted by police while being driven in an area in which the informant stated it would be located. Police stopped the car and told *176 defendant to step out. The officers then conducted a warrantless search of the car and found a brown paper bag in its trunk. They opened the bag and discovered glassine envelopes containing what was later determined to be heroin.
The question before the Supreme Court was “the extent to which police officers — who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it — may conduct a probing search of compartments and containers within the vehicle whose contents aré not in plain view” {id., at p 800). The court held that in such circumstances, police may conduct a search “that is as thorough as a magistrate could authorize in a warrant ‘particularly describing the place to be searched’ ” {id.). The court added that under this holding, “[t]he scope of a warrantless search of an automobile * * * is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which [upon post hoc determination] there [was] probable cause to believe that it may be found” {id., at p 824).
The court reasoned that: “A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand” (United States v Ross, 456 US 798, 820-821, supra).
*177 In so holding, the court reaffirmed its result in Sanders, but characterized it as not a “true” automobile exception case — a case in which police had probable cause to believe that contraband was secreted somewhere in the automobile necessitating a search of the entire automobile. Rather, the court stated that Sanders should have been considered a case closely akin to Chadwick, in which a warrant was required because there was probable cause to search only a container. As probable cause to search was localized in the suitcase, mere placement of the suitcase in the taxi did not give rise to generalized probable cause to believe that contraband was located somewhere in the taxi, thereby invoking the automobile exception and justifying a warrantless search of the entire taxi, including the suitcase in the trunk (id., at pp 812-813; see Arkansas v Sanders, 442 US 753, 766-767 [Burger, Ch. J., concurring], supra).

B

Defendant, in urging affirmance of the suppression order, argues that his motion was properly decided according to the law then extant defining the scope of the automobile exceptions to the warrant requirements of the Fourth Amendment and section 12 of article I of the New York State Constitution (see People v Belton, 55 NY2d 49, 54, n 3, supra), and that under the retrospectivity principles enunciated in United States v Johnson (457 US 537), the Supreme Court’s holding in Ross constituted a clear break with past precedent and therefore should be given prospective effect only. The People argue that the Supreme Court’s decisions in Ross and this court’s decision in People v Belton (supra) “instruct that the search of defendant’s suitcase and the recovery of his cocaine were lawful”. It is further argued that constitutional pronouncements that uphold or validate police conduct should be applied to cases not yet final at the time the pronouncement is made.
Consideration first turns to whether, under United States v Johnson (supra), the rule announced in Ross should be applied to this appeal. In Johnson, the court examined the circumstances in which a “new” Fourth Amendment interpretation will be applied to cases that are on direct appeal when the rule is announced. Three *178 “threshold” categories of cases were identified as necessarily requiring either retrospective or prospective application of the newly announced constitutional rule. When the rule constitutes the application of settled principle to a novel factual situation “it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way” (United States v Johnson, 457 US 537, 549, supra). When, however, the court has expressly characterized the ruling to be “‘a clear break with the past,’ ” it will be applied only prospectively (id.). Finally, when the constitutional ruling serves to void ab initio a trial court’s authority to convict or punish a criminal defendant, that construction will be accorded full retroactive effect (id., at p 550-551).
The Supreme Court’s decision in Ross falls under none of these categories. On the one hand, the rule announced in Ross cannot be characterized as an application of settled precedent to a new factual setting. Indeed, in Robbins v California (453 US 420), the court’s last statement before Ross on the permissible scope of warrantless searches of automobiles, a majority of the court, relying on the rationale in Sanders, construed the Fourth Amendment to forbid the warrantless search of closed containers found in an automobile, notwithstanding that police had engaged in a lawful search of the automobile itself (id., at pp 428, 429-430). On the other hand, the court’s decision in Ross may not be considered “a clear break” with past precedent under the Johnson standard, which places great weight on how the court characterizes its holding in relation to past precedent (see United States v Johnson, 457 US 537, 549, 551-552, supra). The court, in Ross, while acknowledging that its decision substantially overruled the holding in Robbins and the rationale in Sanders, also noted that “no legitimate reliance interest can be frustrated” by its decision in Ross, and that it is “convinced” that the rule enunciated in Ross “is faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout [its] history” (United States v Ross, 456 US 798, 824, supra). The Ross decision clearly does not fall under the third “threshold” category as *179 it does not serve to completely insulate a defendant from conviction or punishment.
When the retrospective effect of a constitutional pronouncement is not controlled by a threshold rule, the Supreme Court has instructed that the newly announced rule should apply to all cases on direct review (see United States v Johnson, 457 US 537, 554, supra; see, also, Linkletter v Walker, 381 US 618; Tehan v United States ex rel. Shott, 382 US 406) as this would advance the principles that a court should not ordinarily diverge from the policy of stare decisis, that justice should be afforded the litigants on the merits of the case, and that cases should be resolved according to the best understanding of the constitutional principles involved (see United States v Johnson, supra, at pp 554-555). The court also noted that “[a]n approach that resolved all nonfinal convictions under the same rule of law would lessen the possibility that this Court might mete out different constitutional protection to defendants, simultaneously subjected to identical police conduct” (id., at p 556).
Applying this rule indicates that United States v Ross should be given retrospective application to all cases on direct review, including the instant appeal. Inasmuch as the principles of retrospectivity discussed above are derived from general principles of judicial decision-making, this court perceives no reason for its application to differ when the new constitutional pronouncement narrows rather than broadens a prior understanding of a constitutional protection.
C
Under the rule announced in Ross, it is evident that the officer’s warrantless search of defendant’s suitcase here was permissible under the automobile exception to the Fourth Amendment’s warrant requirement. The police observation of defendant’s companion holding under defendant’s nose a paper cylinder protruding from a manila envelope provided ample cause for police to believe that defendant was ingesting a controlled substance. Indeed, as the suppression court noted, “[g]iven the state of affairs in New York City in 1981, the average moderately aware, *180 reasonable and prudent citizen who saw defendant’s behavior would have drawn the same conclusion as the police officers”. Thus, the initial stop was reasonable.
Immediately after the stop, as defendant was retrieving his license and registration from his pocket, a vial containing white powder came into plain view. There is an affirmed finding that probable cause to arrest defendant arose at this point from “the combination of the officers’ observations from their car plus the observation of the vial”. These observations also gave the officers cause to believe that contraband was secreted somewhere within defendant’s truck. Having observed the manila envelope, which was of the type typically used to contain controlled substances, and later having observed the vial containing white powder, police reasonably could have undertaken a search of the automobile. Thus, inasmuch as there was probable cause to believe contraband was located somewhere in the truck, police were free, under the Fourth Amendment, to conduct a warrantless search of the entire truck, including any compartments, and the locked suitcase (see United States v Ross, 456 US 798, supra). This was not an instance in which probable cause to search focused only on the particular piece of luggage.
_D
This court’s inquiry into this search’s reasonableness does not end, however, upon the determination that it passed muster under the Fourth Amendment. This court has held that “[b]y interposing the requirement of a warrant issued judicially, upon information attested by oath or affirmation and which establishes probable cause, the State Constitution protects the privacy interests of the people of our State, not only in their persons, but in their houses, papers and effects as well, against the unfettered discretion of government officials to search or seize” (People v Belton, 55 NY2d 49, 52, supra; see NY Const, art I, §12).
In People v Belton (55 NY2d 49, 54, supra), this court recognized a “narrow” automobile exception to the State Constitution’s warrant requirement. “[T]he reduced expectation of privacy associated with automobiles and the *181 inherent mobility of such vehicles” combine to justify the warrantless search of an automobile upon probable cause to believe it carries contraband (id., at p 53). The court cautioned, however, that under the State Constitution, “[t]he automobile exception [is] * * * subject to the limitations inherent in the factors which are its predicate” (id., at p 54).
In limited situations, such as in the instant appeal, the warrantless search of closed containers found in an automobile may be justified. The circumstances giving rise to a valid arrest of the driver or passenger of an automobile may also permit police to search a closed container found in the automobile. In Belton, this court held that when “police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein” (People v Belton, 55 NY2d 49, 55, supra [emphasis supplied]).
It is noted that there is no inconsistency in this rule and the general rule governing the permissible scope of a search incident to arrest (see People v Smith, 59 NY2d 454). The rule provided above has reference to property stored in an automobile and the lack of a need for obtaining a warrant, which do not attach in other circumstances. Moreover, while a search incident to arrest may be conducted without probable cause beyond that to arrest the person, thereby necessitating the strict temporal and spatial limits, as well as the presence of some exigency, the above rule requires both probable cause to search the automobile generally and a nexus between the probable cause to search and the crime for which the arrest is being made.
The officer’s warrantless search of defendant’s suitcase was permissible under the State Constitution. Upon defendant’s arrest for drug possession, the police had probable cause to believe that contraband related to that crime was located somewhere in the truck. Therefore, they could properly search the entire truck, including any closed *182 containers found therein. It was irrelevant that the suitcase was locked. Again, under our State Constitution as under the Federal Constitution it is critical that the probable cause here related to the automobile and did not focus exclusively on the container.
Accordingly, the order of the Appellate Division should be reversed and defendant’s motion to suppress denied.