OPINION OF THE COURT
Robert B. Wiggins, J.
Defendant, Tyshawn Jones, has been charged under indictment No. 2016-122 with assault in the second degree (Penal Law § 120.05 [3]), criminal impersonation in the second degree (§ 190.25 [1]), resisting arrest (§ 205.30), criminal possession of marijuana in the fifth degree (§ 221.10 [2]), speeding (Vehicle and Traffic Law § 1180 [d]) and operating a motor vehicle without a license (§ 509 [1]). This court granted that portion of defendant’s omnibus motion requesting a hearing on the suppression of certain evidence and statements, and a combined HuntleylMapp hearing was held on September 27, 2016.
L
Defendant’s primary contention is that the marijuana found in a backpack in defendant’s vehicle must be suppressed because the Trooper did not have probable cause to search the trunk of his vehicle, where the backpack was found. Trooper Robert Hoyt testified that, around 11:00 p.m. on April 13, 2016, he was running radar on Route 15A in the Village of Lima when he saw defendant’s vehicle speeding northbound up the road. He visually estimated the vehicle’s speed to be 70 miles per hour and confirmed that estimate with radar. Trooper Hoyt stopped the vehicle and, after asking the driver (and sole occupant of the vehicle) to move further off the road, approached the vehicle and asked for his license and registration. Defendant produced a license bearing the name of Manu Jones and a rental agreement for the vehicle in that same name. Defendant produced the rental agreement from a compartment on the driver’s side door. Trooper Hoyt took the documents and returned to his vehicle.
When he first approached the vehicle, Trooper Hoyt had not noticed any odor. However, upon returning to his vehicle, he “could smell the odor of marijuana on it coming from the rental agreement.” Trooper Hoyt testified to his training and personal *538 experience smelling burnt marijuana. Upon then returning to defendant’s vehicle, Trooper Hoyt “could smell the odor of burnt marijuana emanating from the vehicle.” At that point, he asked defendant to exit the vehicle and stand at the front. After searching defendant “for any weapons or drugs on his person,” and finding none, Trooper Hoyt searched the interior of the vehicle. After finding no contraband on the driver’s side, he asked defendant where the marijuana was and defendant denied having any. Trooper Hoyt then searched the passenger side of the vehicle and still found nothing. He recounted that, during his training at the State Police Academy, he was taught that “there is an automobile exception that states if there is an odor of marijuana in the vehicle you can search the entire vehicle, including the trunk and any occupants.” In keeping with that training, Trooper Hoyt opened the trunk, by using the trunk release mechanism and folding down the backseat, giving access to the trunk, where he located a backpack. Taking the backpack out and setting it on the trunk, Trooper Hoyt searched it and found a baggie of what he believed to be marijuana. At that point, Trooper Hoyt noticed defendant moving back towards the driver’s door; Trooper Hoyt grabbed defendant’s left wrist and ordered him to turn around and give him his other hand to be cuffed. Defendant refused and, ultimately, a fight ensued in which defendant struck Trooper Hoyt and grabbed for his gun before Trooper Hoyt ultimately shot defendant. The court finds Trooper Hoyt’s testimony to be entirely credible and accepts his version of the events.
IL
The Fourth Amendment of the United States Constitution protects “against unreasonable searches and seizures,” and provides further that “no [w] arrants shall issue, but upon probable cause.” Under long-standing Supreme Court precedent, warrantless searches “are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions” (Katz v United States, 389 US 347, 357 [1967]). One such exception that has developed is the automobile exception, which was first established over 90 years ago in Carroll v United States (267 US 132 [1925]), and which itself is an outgrowth of the exigent circumstances doctrine. “The mobility of automobiles . . . ‘creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible’ ” (Cali *539 fornia v Carney, 471 US 386, 391 [1985], quoting South Dakota v Opperman, 428 US 364, 367 [1976]). Pursuant to the automobile exception, “police may conduct a warrantless search of a vehicle where they have probable cause to believe that the vehicle contains evidence or contraband” (People v Baez, 24 AD3d 112, 115 [1st Dept 2005], Iv denied 6 NY3d 809 [2006]). Probable cause is key, and the ex post facto analysis of whether an officer has probable cause to search a vehicle, and to what extent, is similar, if not identical, to the analysis used in determining whether probable cause would exist to issue a warrant prior to the search. As the Supreme Court explained in United States v Ross (456 US 798, 808 [1982]):
“the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers. ‘ “[A]s we have seen, good faith is not enough to constitute probable cause. That faith must be grounded on facts within knowledge of the [officer], which in the judgment of the court would make his faith reasonable.” ’ ”
And, just as the scope of a warrant is defined by the facts giving rise to the finding of probable cause, officers acting pursuant to the automobile exception, “[t]he scope of a war-rantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize” (id. at 823). Expanding on this concept that the scope of the search is dependent on the nature of the probable cause justifying it, the Court explained:
“The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence *540 does not justify a search of the entire cab” (id. at 824).
Thus, “ £[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search’ ” (People v Ellis, 62 NY2d 393, 398 [1984], quoting Ross, 456 US at 825), including, in appropriate circumstances at least, the vehicle’s trunk (People v Jackson, 111 AD2d 412 [2d Dept 1985]). Again, however, the extent of a vehicle search is coextensive with the facts giving rise to probable cause. The Supreme Court reemphasized this in California v Acevedo (500 US 565 [1991]). There, officers saw the defendant leave a known drug house with a bag similar to ones they had previously seen that contained marijuana. Based on this, the officers stopped defendant’s vehicle and opened the trunk to search the bag. The Court held that, on these facts, “the police had probable cause to believe that the paper bag in the automobile’s trunk contained marijuana,” and such probable cause “allows a warrantless search of the paper bag” (id. at 580). It warned, however, that “[t]he facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment” (id.).
III.
Defendant contends that the odor of burnt marijuana emanating from the interior of a vehicle may give probable cause to search the interior of the vehicle pursuant to the automobile exception, but not the trunk. The People contend that the odor of burnt marijuana emanating from a vehicle is per se probable cause to search every part of the vehicle, including the trunk. However, while People v Horge (80 AD3d 1074 [3d Dept 2011]) may support the People’s proposition, the weight of authority in New York appears to be to the contrary (see e.g. People v Ramos, 122 AD3d 462 [1st Dept 2014]; see also People v Romeo, 15 AD3d 420 [2d Dept 2005], lv denied 4 NY3d 890 [2005]; compare People v Singleton, 139 AD3d 208 [1st Dept 2016]).
In Ramos, an officer stopped the defendant’s vehicle after seeing the driver smoke what appeared to be a marijuana cigarette. After stopping the vehicle, the cigarette could not be located, but the officer testified that he smelled an odor of *541 marijuana. However, the defendant did not appear to be impaired and, while glassine envelopes were found, they were empty. Under these circumstances, the Court held that there was no probable cause to search the trunk of the vehicle. The Ramos court distinguished two earlier cases—People v Mena (87 AD3d 946 [1st Dept 2011], lv denied 18 NY3d 860 [2011]) and People v Valette (88 AD3d 461 [1st Dept 2011], lv denied 18 NY3d 887 [2012])—where trunk searches were upheld based largely on the officers having detected an odor of marijuana. In both Mena and Valette, the defendants had admitted to smoking marijuana, thus upping the probable cause ante.
In Romeo, the defendant was initially stopped for a traffic infraction, and thereafter ordered out of the vehicle when he could not produce identification, at which point a pat down revealed a baggie of marijuana on the defendant’s person. Despite the actual presence of this contraband, the Court held that a search of the trunk of the vehicle was not permissible under the automobile exception. Finally, in Singleton, the Court upheld a search under the automobile exception where, after a traffic stop, the police noticed “the odor of marijuana” (139 AD3d at 215). However, the Court specifically noted that “the police did not exceed the proper scope of such a search. The record establishes that the police found the revolver in an area that constituted part of the car’s passenger compartment, readily accessible to the occupants, and that did not constitute part of the trunk” (Singleton, 139 AD3d at 215 [emphasis supplied]). The obvious implication is that a search of the trunk under those circumstances would have been impermissible.
The People cite People v Horge for the proposition that the search here was permissible, and that case does provide some support for their position. In Horge, as here, the defendant was initially stopped for a traffic infraction, at which point the “Trooper then approached the open window of the vehicle and, from his past training and experience, he recognized the smell of burning marihuana” (Horge, 80 AD3d at 1074). While the Court initially seems to say that this alone was sufficient to give probable cause to search the entire vehicle, including the trunk, the Court went on to note that
“the Trooper’s detection of marihuana smoke was buttressed here by the fact that he momentarily went to his patrol car after detecting the marihuana odor and, upon his return, found that defendant had placed new air fresheners in the car and ap *542 peared to be attempting to destroy his cell phone” {id. at 1075).
Even assuming, arguendo, that Horge stands for the proposition that the odor of burnt marijuana emanating from a vehicle gives rise to probable cause to search the vehicle’s trunk, it is clear that, at best, there is a split in the Appellate Divisions on this issue. And, frankly, the analysis in all of these cases is suspect, inasmuch as none of the decisions really attempts to relate the finding of probable cause to the permissible scope of the search to be conducted, i.e., “the places in which there is probable cause to believe that [the object of the search] may be found” (Ross, 456 US at 824).
Federal courts appear equally split on this issue. There are cases that, like Horge, appear, at least, to authorize trunk searches based upon the odor of marijuana emanating from the passenger compartment of a vehicle (see e.g. United States v Beck, 11 Fed Appx 700, 700 [8th Cir 2001] [“The smell of burnt marijuana emanating from Beck’s car gave the police probable cause to search the entire vehicle for drugs”]; United States v Mosby, 541 F3d 764, 768 [7th Cir 2008] [“Sergeant Mushinsky . . . smelled marijuana as he stood next to the minivan .... The smell alone was enough to give rise to probable cause to search the entire vehicle, including closed containers like the garbage bag”]; United States v Champion, 2013 WL 5673476, *2, 2013 US Dist LEXIS 149692, *6 [ED Va, Oct. 17, 2013, Criminal Action No. 3:13-CR-97] [“The Troopers have probable cause to search the trunk of the vehicle once they smell marijuana in the passenger compartment”]). Others, however, eschew such a per se rule and analyze the propriety of a trunk search based upon whether there is particularized probable cause to believe that the trunk, as opposed to the passenger compartment, contains marijuana.
In United States v Carter (300 F3d 415 [4th Cir 2002]), for example, the court upheld a trunk search, but not based solely on the odor of burnt marijuana. The court initially said that an officer “clearly had probable cause to search the passenger compartment of [the suspect’s] vehicle without a warrant, based on the burning marijuana he smelled as he approached the car” {id. at 422). However, “whether he also had probable cause to search the locked trunk of the car and the closed suitcase inside the trunk” {id.) was dependent on whether there was additional evidence that would give rise to probable cause that there was contraband in the trunk as well. The court *543 rejected “[t]he government[⅛] argu[ment] that the K-9 drug dog’s ‘alerting’ on the driver side of the car gave Mooney probable cause to search the entire vehicle: including the trunk and the suitcase” (id. [emphasis omitted]). Instead, “[b]ecause probable cause must be tailored to specific compartments and containers within an automobile, the key is whether the dog ‘alerted’ in the precise vicinity of the trunk” (id.). Because this was a factual issue that the District Court had resolved in the government’s favor, the Fourth Circuit upheld the search.
The 10th Circuit takes a particularly nuanced approach to this issue, making a distinction between the odor of raw and burnt marijuana. The former, at least where the odor is sufficiently strong, generally gives rise to probable cause to search a vehicle’s trunk, while the latter, without more, generally does not. The court’s reasoning is that
“the smell of burnt marijuana is generally consistent with personal use of marijuana in the passenger compartment of an automobile. In such a case, therefore, there is no fair probability that the trunk of the car contains marijuana and an officer must limit the search to the passenger compartment absent corroborating evidence of contraband. When, on the other hand, an officer encounters, as was the case here, the overpowering smell of raw marijuana, there is a fair probability that the car is being used to transport large quantities of marijuana and that the marijuana has been secreted in places other than the passenger compartment. Accordingly, in such circumstances, a search of the trunk is appropriate” (United States v Downs, 151 F3d 1301, 1303 [10th Cir 1998] [citations omitted]).
[[Image here]]
Turning back to the facts of this case, the court does not, at this point at least, accept the People’s position that the odor of unburnt marijuana, in and of itself, constitutes probable cause in all cases to search the trunk of a vehicle. Mindful of the rule that “[t]he scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found” (Ross, 456 US at 824), the court holds that the smell of burnt marijuana, at the very least, gives rise to probable cause to search those areas where any remaining contraband could reasonably have been secreted after consumption in the vehicle. *544 That certainly extends to the passenger compartment and, under the unique circumstances of this case, it extends to the trunk as well. While Trooper Hoyt did answer “correct” when defense counsel stated that the trunk “was not in the reachable area” of the vehicle, it was clear that the trunk was, in fact, accessible from the interior of the vehicle, as it was actually accessed by Trooper Hoyt from the passenger compartment by folding down the backseat. Thus, while it may have posed some difficulties, defendant could have accessed the trunk from the interior of the vehicle as well to stow any remaining marijuana. Accordingly, the search was supported by probable cause and that part of defendant’s motion seeking suppression of the marijuana is denied.
As for the statements defendant made at the hospital to Investigator Salamone, defendant was Mirandized prior to speaking with the Investigator and he responded appropriately to the Investigator’s questions. Even assuming, arguendo, that defendant’s thought processes were affected by his injuries, the court concludes that his “cognitive ability was not so impaired as to render him unable to make voluntary and trustworthy statements” (People v Carbonaro, 134 AD3d 1543, 1548 [4th Dept 2015], lv denied 27 NY3d 994 [2016]). Accordingly, that part of defendant’s motion seeking suppression of his statements is also denied.